**METROPOLITAN LIFE INSURANCE COMPANY, Plaintiff, Appellant,**

v.

**Dan A. DITMORE, M.D., and Sea Island, P.C., Defendants, Appellees.**

**METROPOLITAN LIFE INSURANCE COMPANY, Plaintiff, Appellee,**

v.

**Dan A. DITMORE, M.D., et al., Defendants, Appellants.**

Nos. 83–1655, 83–1673.

United States Court of Appeals, First Circuit.

Argued Jan. 4, 1984.

Decided Feb. 24, 1984.

Will J. Bangs, Boston, Mass., with whom Mitchell H. Kaplan, and Choate, Hall & Stewart, Boston, Mass., were on brief, for Metropolitan Life Ins. Co.

Kenneth A. Behar, Boston, Mass., with whom Edward D. Kalman, and O'Leary, Behar & Kalman, Boston, Mass., were on brief, for Dan A. Ditmore, M.D., et al.

Before COFFIN, BOWNES and BREY-ER, Circuit Judges.

BOWNES, Circuit Judge.

This diversity action involves overpayments of health insurance benefits alleged to have been caused by false and misleading statements in claim forms submitted by the defendants. Plaintiff, Metropolitan Life Insurance Company (Metropolitan), is a New York corporation with its principal place of business in New York; defendant Dr. Dan Ditmore is a Massachusetts citizen, and codefendant Sea Island is Dr. Ditmore's wholly-owned Massachusetts professional corporation with its principal place of business in Massachusetts. Metropolitan brought suit in the United States District Court for the District of Massachusetts, seeking relief on four counts: (1) damages for overpayments resulting from fraudulent claims made from January 1980 through November 1982; (2) declaratory relief determining Metropolitan's liability on claims submitted after November 1982, but not yet paid; (3) restitution of money paid by mistake since January 1980; and (4) treble damages and attorney's fees for unfair or deceptive acts or practices under Mass.Gen.Laws Ann. ch. 93A, § 2. The district court granted summary judgment for defendants on Counts I and IV, and dismissed Counts II and III for failure to join necessary parties. Plaintiffs appeal, and defendants cross-appeal.

The facts are largely undisputed. Under a group health insurance policy (the Plan) issued to the General Electric Company by Metropolitan, Metropolitan has agreed to pay benefits to eligible General Electric employees and their dependents for medical care, including treatment and consultation for nervous or mental conditions. The benefits amount to 50% on the first $1000 (and 100% thereafter) of reasonable, necessary, and customary expenses, and are subject to a $50 deductible per claimant per year. Excluded from coverage are charges for services performed by a "psychologist" not licensed in Massachusetts.

Since at least January 1980 General Electric employees and their dependents covered by the Plan have sought treatment from Dr. Ditmore and Sea Island. Psychotherapeutic sessions, on a group as well as an individual basis, have been conducted by Dr. Ditmore and his staff. The staff consists of one psychologist licensed in Massachusetts, one psychologist licensed in other states only, five unlicensed psychologists, and one registered nurse. The charge for a psychotherapeutic session is $100, regardless of how long the session actually lasts and whether it involves group or individual therapy; patients are also notified that they will be charged the full amount for appointments which they fail to keep. The patients supplied Dr. Ditmore with claim forms which he filled out and submitted to Metropolitan. The claim forms all require in substantially identical terms an "attending physician's statement" setting forth "dates of treatment," "description of services and diagnosis," "charge," and "physician's name." A separate instruction sheet, entitled "How to Complete This Claim Form," includes a "sample attending physician's bill" and reminds the person filling out the form to provide a "complete description of the service rendered," "date and charge for the service," and "diagnosis." At the bottom of the claim form appears the following statement, signed by the patient: "I hereby authorize payment directly to [Dr. Ditmore] of any benefits otherwise payable to me as determined by [Metropolitan] on account of expenses for indicated services.... I understand that I am financially responsible to [Dr. Ditmore] for charges not covered by this authorization."

Based on the claim forms prepared and submitted by Dr. Ditmore, Metropolitan routinely paid defendants the full amount of their charges, which totalled over $1,200,000 from January 1980 through November 1982. Following an audit of these claims, Metropolitan concluded that it had been making substantial overpayments, and began in November 1982 to withhold further payments.

**4**

■ We turn first to Metropolitan's allegations of deceit and unfair or deceptive acts or practices in Counts I and IV respectively. To make out a cause of action for deceit under Massachusetts law, a plaintiff must show

that the defendant made a false representation of a material fact with knowledge of its falsity for the purpose of inducing the plaintiff to act thereon, and that the plaintiff relied upon the representation as true and acted upon it to his damage.

*Barrett Associates, Inc. v. Aronson*, 346 Mass. 150, 190 N.E.2d 867, 868 (1963) (citations omitted). Metropolitan's complaint lists three statements made by Dr. Ditmore on the claim forms which are alleged to amount to misrepresentations of material facts. First, Dr. Ditmore consistently listed himself as the "attending physician," even when the therapy in question was actually conducted by one of his staff who might or might not have been a licensed psychologist. Second, Dr. Ditmore described the services rendered merely as "psychotherapeutic sessions," without indicating whether they consisted of individual or group therapy. Finally, Dr. Ditmore listed a uniform charge of $100 per session, without respect to the kind or duration of the sessions. The complaint also alleged the other elements of deceit, *viz.*, fraudulent intent, reliance, and damages.

The defendants moved for summary judgment. In his supporting affidavit, Dr. Ditmore admitted the allegations in Metropolitan's complaint concerning his treatment and billing practices, as well as his method of filling out the claim forms; he denied, however, that any of his statements on the claim forms constituted a misrepresentation, and advanced his own innocent construction of each of the statements in question. He did not specifically deny that the statements were made with the intent to mislead Metropolitan, nor did he controvert Metropolitan's allegations of reliance and damage. The district court granted summary judgment "on the strength of Dr. Ditmore's affidavit."

■ Summary judgment is appropriate only when the pleadings and other submissions show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). In reviewing a grant of summary judgment, we must view the record in the light most favorable to the party opposing the motion, and indulge all inferences favorable to that party. *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).

■ Applying this standard, we think that Dr. Ditmore failed to meet his burden with respect to two questions of material fact. First, he did not show that no misrepresentations were made. The affidavit, it is true, sets forth various facts in support of defendants' contention that Dr. Ditmore's statements on the claim forms were susceptible of an interpretation consistent with the objective facts they represented. For example, Dr. Ditmore relies on a Massachusetts statute permitting delegation of medical services for the proposition that he remained the "attending physician" even when he did not personally conduct psychotherapeutic sessions. He also points out that the claim forms were drafted in general terms, and did not call for more specific information than he provided. Defendants' argument is colorable and articulately propounded, but by no means sufficient to show that no misrepresentations were made. At best, the affidavit shows that Dr. Ditmore's statements could have lent themselves to either of two interpretations, making them ambiguous. There is no showing that the innocent interpretation advanced by defendants is more reasonable than the deceptive one adopted by Metropolitan, or that the latter is unreasonable. The conflict between the parties' interpretations of disputed language is in itself sufficient to defeat the motion for summary judgment. *See Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 9–10 (2d Cir.1983).

■ In the present posture of the case, defendants may not avail themselves of the maxim that language in insurance con-

tracts is to be construed strictly against the insurer, for Metropolitan is entitled to have inferences drawn in its favor as the party opposing summary judgment. Nor are we persuaded that this case involves only failures to disclose information, which are not actionable under Massachusetts law absent a duty to disclose. We note that partial disclosures and half truths are under some circumstances tantamount to misrepresentations of fact, see *Kannavos v. Annino*, 356 Mass. 42, 247 N.E.2d 708, 711–12 (1969); Restatement 2d of Torts §§ 27 & 29, and hold that there exists a genuine issue of material fact as to whether Dr. Ditmore's statements amounted to misrepresentations. *See Catalina Yachts v. Old Colony Bank & Trust Co.*, 497 F.Supp. 1227, 1236 (D.Mass.1980).

The second factual question which precludes summary judgment at this stage involves Dr. Ditmore's state of mind. Under Massachusetts law, "an intentional misrepresentation is not a prerequisite to recovery for deceit," *Snyder v. Sperry & Hutchinson Co.*, 368 Mass. 433, 333 N.E.2d 421, 428 (1975); rather, the element of fraudulent intent may be proved by showing that a defendant made a statement "as of [his] own knowledge" that was false. *Id.* Dr. Ditmore's affidavit does not address the crucial question whether he was aware of the interpretation Metropolitan would attribute to his statements on the claim forms, nor whether the statements were made with the requisite state of mind. " 'State of mind is difficult to prove and great circumspection is required where summary judgment is sought on an issue involving state of mind.' " *Hahn*, 523 F.2d at 468 (citation omitted). Although this does not mean that a state of mind issue may never be resolved on summary judgment, *id.*, we think that such a procedure was doubly inappropriate in the present case, where the party opposing the motion was afforded no opportunity for discovery. *See Schering Corp.*, 712 F.2d at 10.

Our reasoning with respect to the first count alleging deceit applies equally to the fourth count alleging unfair or deceptive acts or practices. Count IV of the complaint merely realleges the contents of the preceding counts, in conjunction with a willful and knowing state of mind, as grounds for treble damages under the Massachusetts consumer protection statute. The allegations raise the same issues of fact concerning misrepresentation and state of mind as in Count I. The district court erred in granting summary judgment on Count IV.

We next consider Count II of the complaint, in which Metropolitan alleges that since November 1982 defendants have continued to submit claim forms containing the same representations as those alleged to be false in Count I, and that Metropolitan has withheld payment on these post-November claims. Metropolitan seeks declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, to the effect that it is not liable (a) to pay claims for services not actually performed by Dr. Ditmore, nor (b) to pay the full $100 rate for group therapy or for treatment lasting less than one hour, nor (c) to pay more than 50% of the first $1000 of amounts required to be paid by the patients themselves.

Defendants point out that the declaratory relief sought by Metropolitan amounts to an interpretation of Metropolitan's obligations under the Plan, that defendants neither are parties to the Plan nor have enforceable rights under it, and that Metropolitan's real dispute, if any, concerns the myriad beneficiaries of the Plan rather than defendants.

Without the Plan as part of the record before us, we are not in a position to know how it is drafted—who are parties to the contract, who are beneficiaries, and how disputes as to coverage are intended to be resolved. Nor does the district court's order clarify matters: it merely states that the second count is "dismissed without prejudice, as a result of plaintiff's failure to join parties pursuant to Fed.R.Civ.P. 19." From the circumstances, however, we infer that the district court found that General Electric employees covered by the Plan who had submitted claims for services per-

formed by the defendants were necessary parties [1] who should have been joined if feasible.

◼ The question of joinder logically depends on the preliminary question, raised by defendants, whether the second count of Metropolitan's complaint properly asserted a claim against the defendants. In order to be a proper party defendant, a party must have a legal right asserted against him; a commercial interest is not enough. *See* 3A Moore's Federal Practice ¶ 19.02 at 19–36 to 42, and ¶ 20.06 at 20–36 to 43. We agree with the defendants' contention that, in substance, Metropolitan seeks a declaration limiting its liability under the Plan, and that such liability runs in the first instance to the participating General Electric employees. The authorization-of-payment provision on the claim forms operates at most to assign to defendants the right to receive payment on claims "as determined by The Metropolitan Life Insurance Company"; it certainly does not purport to transfer a Plan participant's rights in gross, and specifically imposes on the participant financial responsibility for "charges not covered by this authorization." Taken at face value—and nothing in the record indicates that they should be otherwise considered—the claim forms create no contractual relationship between Metropolitan and defendants. The defendants would presumably lack standing to bring an action contesting the amount or extent of coverage under the Plan, for they have no discernible legally protected interest in such coverage. It is the participating employees who are ultimately liable for whatever medical expenses fall outside the coverage determined by Metropolitan, and it is therefore a matter of complete indifference to defendants, in terms of the legal interests involved, how much of the total expense is borne by the insurer and how much by the insured. It is not enough that a single suit in federal court to determine the scope of coverage under the Plan would undoubtedly serve Metropolitan's business convenience if there is no claim of substance against the defendants to support the request for declaratory relief.

◼ It is, of course, common for an insurer to bring an action for declaratory relief against the insured to establish the limits of liability under a policy. *See Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617 (1937). It is also elementary that such actions are subject to the constitutional and statutory requirement of a "controversy" that is "definite and concrete, touching the legal relations of parties having adverse legal interests." *Aetna Life Ins. Co.*, 300 U.S. at 240–41, 57 S.Ct. at 463–64. Moreover, the controversy must be "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Casualty Co.*, 312 U.S. at 273, 61 S.Ct. at 512. We see no indication in the record of the present case that any particular claim has been determined by Metropolitan to be outside the Plan's coverage; thus a definite and concrete controversy is lacking. Although claims have been filed and payment on them withheld since November 1982, there is no trace of a ripe controversy between Metropolitan and any insured individual. Should such a controversy arise in the future, it will then be time to determine the appropriate forum and requisite parties for its adjudication. For present purposes we hold that the second count of Metropolitan's complaint was properly dismissed with respect to the defendants, albeit on different grounds from those given by the district court. *See Helvering v. Gowran*, 302 U.S. 238, 245, 58 S.Ct. 154, 157, 82 L.Ed. 224 (1937).

We turn to the third count, in which Metropolitan alleges that since January

---

**1.** Defendants also argue on appeal that General Electric, and possibly the employees' labor union as well, should be considered necessary parties. We have before us no indication of the company's or the union's "interest" in benefits under the Plan, and need not address the question here. We note, however, that our discussion of proper, necessary and indispensable parties in connection with Counts II and III is equally applicable to any additional absent parties with the requisite "interest" under Rule 19.

1980 it has mistakenly paid amounts to defendants for which it was not liable under the Plan. Specifically, the Plan allegedly excludes from coverge 50% of the first $1000 of certain medical expenses, and Metropolitan, having mistakenly paid the full amounts of those charges, seeks restitution for the excess payments. The district court dismissed this count, as it did Count II, for "failure to join parties pursuant to Fed.R.Civ.P. 19."

Like the declaratory relief count, the count for restitution of money paid by mistake raises a preliminary question concerning the viability of the claim. The scope of the claim, *i.e.*, its substantive elements and the potential parties against whom it may be asserted, must be determined under Massachusetts law. Assuming that the third count is the equivalent of an equitable claim for money had and received, we note that Metropolitan has arguably failed to allege a mutual mistake of the parties, *see Corbett v. Craven*, 82 N.E. 37, 38 (1907), or fraud by the defendants with respect to the deductible amounts in issue, *see Merchants' Ins. Co. v. Abbott*, 131 Mass. 397, 401 & 405 (1881),[2] on which the requested relief may be based.

· Because our decision requires in any event that this case be remanded to the district court, we think that that court should consider, on the basis of a more fully developed record,[3] whether Metropolitan's claim for restitution of deductible amounts paid by mistake can be asserted against the present defendants, and whether, if not, there is jurisdiction over the claim with respect to the proper parties defendant.

In order to consider the district court's ruling properly, we must assume, as the district court apparently did, that there was jurisdiction over Metropolitan's claim against defendants for money had and received, and further that the individual Plan participants would qualify as necessary parties under Rule 19(a) on account of their "interest" in the deductible amounts. Without deciding as much, we make the requisite assumptions for purposes of the present discussion.

We infer from the district court's ruling that it found the individual Plan participants[4] to be indispensable parties under Federal Rule of Civil Procedure 19(b); had it found them merely necessary under Federal Rule of Civil Procedure 19(a), that

**2.** In *Merchants' Ins. Co. v. Abbott,* 131 Mass. 397 (1881), the insured party filed fraudulent claims, which the insurer paid directly to innocent third parties who had accepted an assignment of the claims in satisfaction of a debt. *The court held that the insurer's action for money had and received would lie only against the insured who had perpetrated the fraud, and not against the third parties.*

The case stands just as if the money had been paid by the [insurer] to [the insured], and by [the insured] to [the third parties], in which case there could be no doubt that, while the [insurer] could recover back the amount from [the insured], neither [the insured] nor the [insurer] could recover the amount from [the third parties]. The fact that the money, instead of being paid by the [insurer] to [the insured], and by [the insured] to [the third parties], was paid directly by the [insurer] to [the third parties], does not make any difference in the rights of the parties. The two forms do not differ in substance. In either case, [the insured] alone is liable to the plaintiffs, and [the third parties] hold no money which *ex aequo et bono* they are bound to return either to [the insured] or to the [insurer].

*Id.* at 401–02.

The liability of [the third parties], who were not parties to any fraud or mistake, can rest upon no other ground than their receipt and retention of money to which they have no right, and which, as between them and the [insurer], justly belongs to the latter; and this liability cannot exist unless the amount of the debt due from [the insured] to them is less than the sum of money which they have received from the [insurer].

*Id.* at 405.

**3.** "A joinder question should be decided with reasonable promptness, but decision may properly be deferred if adequate information is not available at the time. Thus the relationship of an absent person to the action, and the practical effects of an adjudication upon him and others, may not be sufficiently revealed at the pleading stage; in such a case it would be appropriate to defer decision until the action was further advanced." Note of Advisory Committee on Fed. R.Civ.P. 19(b).

**4.** And possibly General Electric and the employees' union as well. *See* note 1 *supra*.

Rule would have required that they be joined as defendants rather than that the count be dismissed. Rule 19 provides in relevant part:

(a) **Persons to be Joined if Feasible.** A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party....

(b) **Determination of Court Whenever Joinder not Feasible.** If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent party being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

■ Rule 19 makes clear that parties who otherwise qualify as necessary should be made parties if this is feasible, and that the action is to be dismissed because of their absence only if they cannot be joined. We are thus faced with the question whether the Plan participants could have been joined, *i.e.*, whether their joinder would not have defeated federal subject matter jurisdiction. The applicable jurisdictional statute, 28 U.S.C. § 1332(a)(1) & (c), provides as follows:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and is between ... citizens of different States....

....

(c) For the purposes of this section ..., a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business....

Although many or all of the individual Plan participants might well meet the requirement of diversity of citizenship with respect to Metropolitan—a condition neither alleged nor supported in the record—it is virtually certain that no individual Plan participant could meet the amount-in-controversy requirement, for the disputed deductible amount is limited to $500 per claimant per year over a thirty-five-month period. The individual claims cannot be aggregated to fulfill the $10,000 amount-in-controversy requirement. *See* 1 Moore's Federal Practice, ¶ 0.97[2] at 954–56; *see also Zahn v. International Paper Co.*, 414 U.S. 291, 300, 94 S.Ct. 505, 511, 38 L.Ed.2d 511 (1973) (plaintiff class may not aggregate several claims; plaintiffs without jurisdictional amount must be dismissed). Quite apart from their citizenship, therefore, the absent parties cannot be joined directly as defendants because such joinder would defeat jurisdiction; nor does joinder of necessary parties as such fall within federal jurisdiction ancillary to the claim asserted against the original defendants. *See* 7 Wright & Miller, Federal Practice & Procedure, § 1610, at 94 & 100; *see also Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 375–76, 98 S.Ct. 2396, 2403, 57 L.Ed.2d 274 (1978) (no jurisdiction over plaintiff's claim against nondiverse third-party defendant).

■ This is not to say, however, that the Plan participants cannot be included in the action. Although they may not

be joined directly as defendants to a claim by Metropolitan, there is nothing to prevent Dr. Ditmore and Sea Island, the present defendants, from impleading the Plan participants as third-party defendants. The authorization-of-payment provision on the claim forms makes it clear that the individual patients are "financially responsible" for any expenses that are not covered by the insurance benefits. This appears to bring the defendants' potential claims for reimbursement from their patients within the ambit of Federal Rule of Civil Procedure 14(a), which provides in relevant part:

> At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him.

Third-party claims, being by definition logically dependent on the resolution of the original suit, fall within the court's ancillary jurisdiction over that suit. *See Owen Equipment,* 437 U.S. at 376, 98 S.Ct. at 2404; *Warren G. Kleban Engineering Corp. v. Caldwell,* 490 F.2d 800, 802 (5th Cir.1974); *Schwab v. Erie Lackawanna R.R. Co.,* 438 F.2d 62, 67 (3d Cir.1971); *Revere Copper & Brass Inc. v. Aetna Cas. & Sur. Co.,* 426 F.2d 709, 715 (5th Cir. 1970). Impleader would suffice to protect the present defendants' interests in avoiding potentially inconsistent obligations resulting from any liability to Metropolitan.

 Even if the present defendants choose not to join the individual Plan participants—thereby waiving any claim of prejudice to themselves from the failure to join these necessary parties—the Plan participants are presumably entitled to intervene as of right under Federal Rule of Civil Procedure 24(a), which provides in relevant part:

> **Intervention of Right.** Upon timely application anyone shall be permitted to intervene in an action ... when the applicant claims an interest relating to the

property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Rule 24(a) defines who may intervene as of right in terms almost identical to those ·of Rule 19(a) defining necessary parties. We have assumed from the outset that the Plan participants are necessary parties because the jurisdictional issue arises only if they are such. We also think it fair to assume that the present defendants' interests do not necessarily coincide with those of the absent parties, and that the latter would therefore not be "adequately represented by existing parties." It seems inescapable, then, that the absent parties meet the requirements of Rule 24(a), *see* 3A Moore's Federal Practice ¶ 19.01–1[5.–6], at 19–26 to 31 (1982), and in that capacity fall within the district court's ancillary jurisdiction. *See Fetzer v. Cities Service Oil Co.,* 572 F.2d 1250, 1252–53 n. 3 (8th Cir.1978); *Blake v. Pallan,* 554 F.2d 947, 956–57 (9th Cir.1977); *Warren G. Kleban,* 490 F.2d at 802; *Revere Copper,* 426 F.2d at 715. The interests of the absent parties should be adequately protected if they are notified by the court of the pending litigation and afforded an opportunity to intervene. *See, e.g., Henri's Food Products Co. v. Home Ins. Co.,* 474 F.Supp. 889, 893–94 (E.D.Wis. 1979).

We conclude that the Plan participants are not indispensable parties. Although they cannot be joined directly as defendants, and although Metropolitan may not assert claims against them without an independent jurisdictional basis,[5] they may be impleaded or allowed to intervene as of right without defeating federal jurisdiction. Either of these courses should be sufficient to protect the interests of all parties, both present and absent, without resorting to the extreme solution of dismissal.

In summary, we remand the case to the district court with the following instruc-

---

5. *See Owen Equipment,* 437 U.S. at 376, 98 S.Ct. at 2403; *West v. United States,* 592 F.2d 487, 490–92 (8th Cir.1979). Plaintiff, having chosen

tions. A full trial must be held on Counts I and IV; the grant of summary judgment on those counts is reversed. The dismissal of Count II is affirmed. With respect to Count III, the district court should first consider whether Metropolitan's underlying claim against the present defendants is viable under Massachusetts law, and then, if so, reconsider whether the Plan participants are necessary parties under Rule 19(a). If they are, they should be afforded an opportunity to join the action; if not, the action may proceed between the original parties. In any case, the district court should make explicit findings as to which absent parties are found proper or necessary, and on what grounds.

*Judgment reversed in part, affirmed in part, vacated in part, and remanded.*

the federal forum to assert its claims, cannot complain of prejudice to its own interests.